U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AO 91 (Rev. FILED Criminal Complaint

FILED
JUL 25 2019
CLERK, U.S. DISTRICT COURT
By_____
Deputy

SEALED

# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| CHRISTOPHER DEMETRIC TAYLOR | ) | 3:19-MJ- |
| | ) | 3-19MJ654-BH |
| _Defendant(s)_ | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 23, 2019__ in the county of __Dallas__ in the __Northern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846, 841 (a)(1) & 841 (b)(1)(C) | Possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance |

This criminal complaint is based on these facts:
See attached Affidavit of SA Jason West.

☑ Continued on the attached sheet.

_____
Complainant's signature

Jason West, SA, DPS
Printed name and title

Sworn to before me and signed in my presence.

Date: July 25, 2019

_____
Judge's signature

City and state: Dallas, Texas

IRMA CARRILLO RAMIREZ, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jason West, a Special Agent with the Texas Department of Public Safety (DPS), being duly sworn, deposes and states:

1. I have been assigned to the Criminal Investigations Division (CID) since 2013. Prior to being assigned to CID, I was a Highway Patrol Trooper for approximately eight plus years. I hold a Master Peace Officer's license from the Texas Commission on Law Enforcement (TCOLE). I have participated in both open and covert surveillance including conventional as well as electronic surveillance. I have experience locating and arresting federal, state and local fugitives. I have experience investigating violations of the Texas Health and Safety Code, including but not limited to, the procurement and execution of search warrants, interviewing and working with confidential informants, and the detection and identification of various narcotics and other dangerous drugs. I have assisted and lead investigations involving violations of the Controlled Substances Act Title 21 U.S.C.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7); that is, I am an officer of the United States who is authorized by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. Because this affidavit is offered for the limited purposes of supporting a criminal complaint charging **CHRISTOPHER DEMETRIC TAYLOR** with a violation of 21 U.S.C. § 846, 841(a)(1) & 841(b)(1)(C), that is, Conspiracy to Possess with Intent to Distribute a Schedule II Controlled Substance of a mixture or substance containing a

detectable amount of cocaine with intent to distribute., it does not include all facts known to me regarding this investigation.

## FACTS

4. On July 23, 2019, Texas Department of Public Safety (DPS), Criminal Investigations Division (CID), Special Agent (SA) Jason West utilized a proven and reliable Cooperating Individual (CI) to make a controlled purchase of 8 Ecstasy tablets from an individual later identified in this affidavit as CHRISTOPHER DEMETRIC TAYLOR – DOB: 04/07/1984 – B/M – SSN# 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 – TXID# 34870034 (A self-admitted and confirmed gang member of the 415 East Dallas Posse Bloods – Criminal Street Gang).

5. The purchase took place at 4510 Metropolitan Avenue, Apartment #203 Dallas, Texas 75210. The controlled purchase was witnessed by SA West. The above CI has been utilized in purchases in the past that have led to numerous seizures of different narcotics.

6. The CI also stated that apartment #204 is also utilized by these individuals to sale and store narcotics. The CI also state that the location is in control of the (415 East Dallas Posse Bloods – Criminal Street Gang).

7. The controlled purchase led to the probable cause affidavit for a search warrant for the above listed location being apartment #203.

8. On July 23, 2019, Texas DPS CID utilized the assistance of Texas DPS Region 1 Special Response Team to execute the search warrant. Upon arrival at 4510 Metropolitan Avenue, Apartment #203 Dallas, Texas 75210 the SRT Team arrived at the front door.

9. The SRT Team announced "State Police, search warrant" and received no response. After several announcements the SRT Team utilized a flash bang outside the door of apartment #203 and made entry into the apartment. Shortly after making entry, SRT Team members heard a "gunshot" that came from apartment #204 that is adjacent to apartment #203. A surveillance camera monitor was also observed on the living room table in apartment #203. Due to hearing the "gunshot", and the possible loss of life, accompanied with previous intelligence received from the CI that the same individuals have control of both apartments, #203 and #204, the SRT Team entered apartment #204.

10. Upon entering apartment #204 the SRT Team did not discover persons, but did discover that someone had recently utilized a chair to climb into the attic of the apartment by way of the attic door located inside a closet in the bedroom. The attic door had been removed and there was fresh drywall on the floor around the chair. While conducting the exigent circumstances search of apartment #204 for any persons with a gun, Special Agents and Troopers of the SRT Team observed controlled substances, marijuana packaged for distribution, along with large sums of US Currency, all in plain view as they walked through the apartment attempting to look for any persons with a gun. SRT Team members stopped the search and held on the attic of the apartment complex while tactical decisions could be made.

11. At that time other apartments were evacuated for safety. After numerous attempts at knocking on the door of apartment #202, four black males exited. The 4 black males were identified as AMBROSE D. EDWARDS, KEVIN PICKETT, HARRY DAVIS and CHRISTOPHER TAYLOR. A written consent search was received from AMBROSE

Complaint Affidavit—Page 3

D. EDWARDS, KEVIN PICKETT and HARRY DAVIS that all resided and were in control of apartment #202. Upon conducting the consent search a hole in the bedroom was discovered by DPS CID Lt. Carlon Stapleton. It was obvious that the hole had recently been made and the ceiling drywall was laying on the floor as if someone had just came through the ceiling.

12. While conducting interviews, CHRISTOPHER TAYLOR was discovered to have scratches on his arms and legs and his shirt had obvious signs of white drywall on it. Interviews conducted on the other three individuals revealed that while they were inside apartment #202 when CHRISTOPHER TAYLOR fell through the ceiling.

13. KEVIN PICKETT stated that he was paid $90 from CHRISTOPHER TAYLOR to not call or tell the Police what happened. CHRISTOPHER TAYLOR was placed under arrest at that time.

14. The SRT Team then conducted a more thorough search of the attic of the apartments (all attics for the aforementioned apartments are connected) to assure no other persons were found to be in the attic that may have been missed for the public's and officer safety. No other persons were discovered. Texas DPS Special Agents then started the original search of apartment #203. During the search, two loaded 1911 magazines were discovered loaded with seven and eight rounds of .45 caliber ammunition. An American Tactical .223 Cal. Rifle loaded with a fully loaded magazine with one round in the chamber, one Micro Draco 762 rifle with a fully loaded magazine with 1 round in the chamber, one Colt 357 revolver handgun were discovered. Marijuana totaling 3365.6 grams, 80 grams

of Cocaine, 100 Oxycodone pills, 100 total Hydrocodone pills and 56.9 grams of ecstasy were also discovered.

15. All illegal narcotics were packaged for distribution and numerous other packaging were discovered. Drug ledgers were also discovered extending back to December 2018, totaling over $20,000 in drug sales. It also appeared due to the drug ledgers being split into shift that this was a 24-hour a day operation as the ledgers were divided into day and night shift increments.

16. A search warrant for narcotics (previously observed by law enforcement while executing the exigent circumstances search) was later retrieved for apartment #204. During the search of apartment #204, a Sig Sauer .45 model 1911 was discovered hidden in the top cabinet of the kitchen. Also discovered was a spent shell casing belonging to the Sig Sauer .45 model 1911 that was found on the floor of the living room, also discovered was a fresh bullet hole in the couch extended through the couch and into the wall pointed at the doorway area of apartment #203 were officers were entering when the "gunshot" was heard. Also found in apartment # 04 was marijuana totaling 120 grams and 85 pills of Hydrocodone. Drug ledgers were also discovered that totaled a large amount of sales being conducted over an extended period of time. All drugs were packaged for distribution and sales.

17. It should be noted that both apartments were utilizing the same "Cobra" type camera surveillance system. The system had cameras facing the roadway and facing down the stairway and walk way to both apartments. It is believed by officers that CHRISTOPHER TAYLOR was/or had been in apartment #203 and seen the SRT Team

approaching the apartment complex via the camera surveillance system and retreated to apartment #204. This is due to the Sig Sauer .45 model 1911 case and remaining two fully loaded magazines belonging to the handgun along with the case being placed on the couch in the living room of apartment #203, in addition to the camera system viewing screen being placed on the table pointed to the couch. Once inside apartment #204, CHRISTOPHER TAYLOR attempted to hide the Sig Sauer .45 model 1911 in the cabinet after firing the gun through the couch and into the wall toward apartment #204 after the flashbang had went off. CHRISTOPHER TAYLOR then attempted to elude the SRT Team by crawling into the attic before falling into apartment #202.

18. TAYLOR waived his *Miranda* rights and agreed to speak with officers. This interview was recorded. TAYLOR admitted to the facts set forth in this affidavit, with the exception of intentionally shooting toward officers and previously being inside apartment #203. TAYLOR stated that he had been previously smoking marijuana on this date and admitted to the sale of narcotics at the apartments. He also admitted that both apartments are involved in the sale of narcotics. TAYLOR also stated that the firearms found were to protect himself during the sale of narcotics.

[NOTHING FURTHER ON THIS PAGE]

## CONCLUSION

19. Based on the foregoing facts, probable cause exists to believe that **CHRISTOPHER DEMETRIC TAYLOR** did knowingly, intentionally and unlawfully possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846, 841 (a)(1) & 841(b)(1)(C) on July 24, 2019.

_____
Jason West, Agent
Texas Department of Public Safety

Subscribed and sworn to before me on this the 25th day of July, 2019

_____
IRMA C. RAMIREZ
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF TEXAS